# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: January 3, 2024

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| BENJAMIN LARSON, | * | |
| | * | |
| Petitioner, | * | No. 19-462V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * | | |

*Leah VaSahnja Durant,* Law Offices of Leah V. Durant, Washington, DC, for petitioner.
*Parisa Tabassian,* U.S. Department of Justice, Washington, D.C., for respondent.

### DECISION ON DAMAGES[1]

On March 28, 2019, Benjamin Larson ("petitioner") filed a petition for compensation in the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that the intradermal influenza ("flu") vaccine he received on November 13, 2017, caused him to suffer a shoulder injury. *Id.* A ruling on entitlement was issued on August 28, 2023, finding that petitioner suffered a left shoulder injury which was caused-in-fact by the flu vaccine he received on November 13, 2017. Ruling on Entitlement (ECF No. 44).

Since the entitlement ruling, the parties have been unable to resolve damages. Both parties submitted briefs to support their positions. *See* Petitioner's ("Pet'r's") Memo (ECF No. 52); Respondent's ("Resp't's") Memo (ECF No. 53).

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The Court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the Court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the Court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the Court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

For the reasons discussed below, I find that petitioner is entitled to an award of $60,000.00 for actual pain and suffering.

**I.      Procedural History**

The Ruling on Entitlement provides a procedural history of this case since it was filed to August 28, 2023, and that procedural history is incorporated herewith and shall not be repeated. Since the filing of the Ruling of Entitlement on August 28, 2023, the parties have been engaged in unsuccessful damages discussions. Accordingly, the parties were ordered to file briefs in support of their positions. Petitioner filed a brief on November 27, 2023, requesting that he be awarded $85,000.00 for pain and suffering. Pet'r Memo at 10. Respondent filed his brief on December 1, 2023, stating that petitioner should be awarded $47,500.00 for pain and suffering. Petitioner is not requesting any other forms of damages.

This matter is now ripe for adjudication.

**II.     Legal standard**

The Vaccine Act provides that "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury," a petitioner may recover "an award not to exceed $250,000." 42 U.S.C. § 300aa-15(a)(4). With regard to pain and suffering and all other elements of damages, the petitioner bears the burden of proof and the medical records are the most reliable evidence of petitioner's condition. *See, e.g.*, *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996); *Shapiro v. Sec'y of Health & Hum. Servs.,* 101 Fed. Cl. 532, 537-38 (2011).

Prior to my appointment as a special master, former Chief Special Master Golkiewicz and others developed an approach with the goal "to fairly treat all petitioners" by "creat[ing] a continuum of injury", in which the statutory cap was reserved for the most severe injuries and lower awards were made for less severe injuries. *Hocraffer v. Sec'y of Health Human Servs.*, No. 99-533V, 2007 WL *914914, at *5 (Fed. Cl. Spec. Mstr. Feb. 28, 2007). In *Graves*, Judge Merow granted review of a special master's pain and suffering award, holding that the "continuum" approach was not "rooted in the statute or precedent". *Graves v. Sec'y of Health and Human Servs.,* 109 Fed. Cl. 579, 590 (2013). Judge Merow set forth a different approach in which the first step is to assess an individual petitioner's pain and suffering by looking to the record evidence, without regard to the $250,000 cap. Only then as a second step, if the award would exceed $250,000, must it be reduced to that maximum. *See id.* at 589-90.

In the Vaccine Program's subsequent history, special masters have of course not been bound by *Graves*.[3] However, they have found it to be persuasive. *See, e.g.*, *I.D. v. Sec'y of*

---

[3] Decisions of special masters and the U.S. Court of Federal Claims constitute persuasive but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). In contrast, the Federal Circuit's holdings on legal issues are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124

*Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *10 (Fed. Cl. Spec. Mstr. Moran April 19, 2013) ("Under the interpretation of the statute offered in *Graves*, cases that used the spectrum approach, such as *Hocraffer* and *Long*, are no longer useful measuring points"); *Reed v. Sec'y of Health & Human Servs.*, No. 16.1670V, 2019 WL 1222925, at *12 (Fed. Cl. Chief Spec. Mstr. Dorsey Feb. 1, 2019) ("it must be stressed that pain and suffering is not based on a continuum"); *Selling v. Sec'y of Health & Human Servs.*, No. 16-588V, 2019 WL 3425224, at *5 (Fed. Cl. Spec. Mstr. Oler May 2, 2019) ("Pain and suffering is not, however, determined based on a continuum"); *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2019 WL 4072069, at *13 (Fed. Cl. Spec. Mstr. Corcoran July 29, 2019) ("… special masters appear to have accepted *Graves*'s methodology since issuance of that decision… I will apply it herein as well, although I do so mindful of the need to consider the overall strength of petitioner's showing herein"), *motion for review granted and remanded on other grounds,* 147 Fed. Cl. 131 (2020); *W.B. v. Sec'y of Health & Human Servs.*, No. 18-1364V, 2020 WL 5509686, at *3 (Fed. Cl. Chief Spec. Mstr. Corcoran Aug. 7, 2020) ("it must be stressed that pain and suffering is not based on a continuum").  I agree with this prevailing approach and have followed it in assessing pain and suffering damages in other SIRVA cases.  *See Desai v. Sec'y of Health & Human Servs,* No. 14-811V, 2020 WL 8768069 (Fed. Cl. Spec. Mstr. Dec, 21, 2020), *recon. denied,* 2020 WL 8184767 (Fed. Cl. Spec. Mstr. Dec. 18, 2020).; *Yost v. Sec'y of Health & Human Servs.,* No. 18-288V, 2022 WL 4593029 (Fed. Cl. Spec. Mstr. Aug. 29, 2022); *Youngmark v. Sec'y of Health & Human Servs.,* No. 17-1431V, 2022 WL 2306867 (Fed. Cl. Spec. Mstr. May 25, 2022); *Galante v. Sec'y of Health & Human Servs.*, No. 18-1933V, 2023 WL 1515357 (Fed. Cl. Spec. Mstr. Jan. 13, 2023). I assess the full value of the damages in a particular case before me, then apply the statutory cap if that becomes necessary.

There is no mathematical formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D.*, 2013 WL 2448125, at *9 ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula").  Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  *Id.* at *9 (internal citations omitted).  I find it appropriate to also consider any impairments in function and/or lost ability to participate in activities which the petitioner previously enjoyed, as a result of the injury.

A special master may also consider prior pain and suffering awards, especially for similar injuries, from both inside and outside of the Vaccine Program to aid the resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). A special master may also rely on his or her own experience adjudicating similar claims.  *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

---

(2003), *aff'd*, 104 F. App'x 712 (Fed. Cir. 2004); *see also Spooner v. Sec'y of Health & Human Servs.*, No. 13-159V, 2014 WL 504728, at n.12 (Fed. Cl. Spec. Mstr. Jan. 16, 2014).

### III. Parties' positions

#### A. Petitioner's arguments

Petitioner asserts that he should be awarded $85,000.00 in past pain and suffering. Pet'r Mem. at 2. Petitioner stated that he is "entitled to a significant award for pain and suffering," because he was acutely aware of the physical pain and suffering he endured as a result of his SIRVA and that his pain was "substantial and debilitating." *Id.* at 5-6.

Petitioner argues that he was aware of his injury because he immediately felt pain and a stinging sensation in his shoulder and that his pain intensified over the following weeks. Pet'r Mem. at 6. He asserts that his pain was so persistent, he was referred to physical therapy. *See* Pet'r Ex. 2 at 44-45. When petitioner was discharged in March 2018, petitioner reported that his pain was a 6 out of 10 and that he continued to have a "deep throbbing pain" in his left shoulder. Pet'r Mem. at 6; *see also* Pet'r Ex. 2 at 44. Petitioner also asserts that his left shoulder affected him physically and emotionally. Pet'r Mem. at 6. He stated that he was unable to participate in his son's activities and doing normal everyday tasks caused him pain. *Id.*

Petitioner argues that the award of $85,000.00 is justified because his pain was "substantial and debilitating." Pet'r Mem. at 6. Petitioner states that his medical records demonstrate that he had decreased range of motion and that his pain was "interfering with normal activities." *Id.* Additionally, the pain petitioner experienced interfered with his sleep and required medication prior to sleeping. *Id.* at 7. Furthermore, petitioner asserts that the pain in his shoulder due to the vaccine injury required multiple appointments with different doctors, physical therapy appointments, and different medications. *Id.* He states that his pain eventually dissipated, he continues to have stiffness in his left shoulder, especially with certain movements. *Id.*

In addition to his awareness of his pain, level of pain, and the length of petitioner's injury, he argues that a higher award is justified because the injury is to his dominant arm. Furthermore, his job is physically demanding, and his injury has affected his work-day. *Id.* at 7.

Petitioner cites the *Gentile* case as analogous to his, where the petitioner was awarded $85,000.00 in actual pain and suffering. Pet'r Mem. At 9; *Gentile v. Sec'y of Health & Human Servs.*, No. 16-980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020). In *Gentile,* petitioner had positive Neers and Hawkins signs, like petitioner in this matter, but also had improvement after the second physical therapy session. *Gentile v. Sec'y of Health & Human Servs.,* 2020 WL 3618909, at *2. Petitioner acknowledged that the petitioner in *Gentile* received three steroid injections, but argues that the second injection resolved her pain, while his pain level has never reached zero out of ten. Pet'r Mem. At 10. Petitioner in this case states that his injury is "at least as serious  an injury as [petitioner in *Gentile*] and should be compensated equally." *Id.*

Petitioner also rejected the comparison of his injury to the petitioner in *Galante.* Pet'r Mem. at 9. He states that the petitioner in *Galante* had extensive pre-vaccination conditions which contributed to the post-vaccination pain and stiffness. *Id.*: *Galante v. Sec'y of Health &*

4

*Human Servs.,* No. 18-1933V, 2022 WL 17852427 (Fed. Cl. Spec. Mstr. Nov. 30, 2022). Petitioner in this matter asserts that *Galante* was resolved by a proffer, not a reasoned damage decision, and proffered cases are not helpful in determining the appropriate amount of compensation to be awarded in shoulder injury cases. *Id.* at n.2 (citing *Henderson v. Sec'y of Health & Human Servs.,* No. 20-1261V, 2023 WL 2728778 (Fed. Cl. Spec. Mstr. Mar. 31, 2023).

Petitioner concluded his brief, stating that he continues to have ongoing stiffness to his dominant arm and that based on what he has endured, $85,000.00 is an appropriate amount.

### B. Respondent's arguments

Respondent recommends that petitioner be awarded $47,500.00 for all damages available under Section 15 of the Vaccine Act. Respondent states that petitioner's injury was mild and limited. Resp't Mem. at 6.

Respondent states that petitioner's symptoms that he alleges are "minimal at best," as evidenced by his delay in seeking treatment until thirty-seven days post-vaccination. Resp't Mem. at 6. He argues that petitioner's voluntary delay suggests that the pain was not significant enough to prompt treatment sooner. *Id.*; citing *Knauss v. Sec'y of Health & Human Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (finding a three-month delay in seeking treatment "indicate[d] that [petitioner's] symptoms did not interfere with his ability to participate in activities of daily life to a degree that was unmanageable.").

Respondent also argues that petitioner's clinical course demonstrates a mild injury. Resp't Mem. at 7. He states that petitioner did not receive any steroid injections, was prescribed a non-steroidal anti-inflammatory medication, presented to three occupational health appointments, and only participated in four physical therapy sessions related to his shoulder. *Id.*; Pet'r Ex. 2 at 55-57, 102. Furthermore, there was no MRI or imaging on petitioner's shoulder to corroborate a specific shoulder injury. Resp't Mem. at 7. Respondent also noted that nine months after the vaccination, petitioner had normal range of motion in his shoulder, and petitioner's resisted motion and strength is "grossly normal and symmetric." *Id.*; Pet'r Ex. 2 at 102. However, petitioner also reported at this appointment that he had a "low-grade ache in the lateral left shoulder" that was noted to be there "most of the time." Pet'r Ex. 2 at 102.

Respondent asserts that petitioner's case is more consistent with *Galanate* than *Gentile.* Resp't Mem. at 8. Respondent states that in *Gentile,* the petitioner may have had full range of motion, as asserted in petitioner's memo, but that she had a painful range of motion. *Id.* Additionally, the petitioner in *Gentile* underwent an MRI which revealed adhesive capsulitis, she received three steroid injections, and participated in nineteen physical therapy session. *Gentile,* at *2-3. This contrasts the petitioner's treatment course, where he had no imaging of his shoulder, did not receive any steroid injections, and only attended four physical therapy sessions. Resp't Mem. at 8. Additionally, the treating orthopedist in *Gentile* submitted two letters to the court stating that petitioner's pain was likely permanent due to the vaccination. *Id.*; *Gentile,* 2020 WL 3618909, at *4. Respondent asserts that the pain and suffering award in *Gentile,* of $85,000.00 was appropriate in that matter because the petitioner's SIRVA "was significantly

5

more severe than [the petitioner in this case], and any comparison strains credulity." Resp't Mem. at 9.

While respondent acknowledged that *Galante* was resolved by a proffer for $55,000.00, the entitlement decision provided facts relevant to the award of pain and suffering. Resp't Mem. at 9; *Galante v. Sec'y of Health & Human Servs.*, No. 18-1933V, 2022 WL 17852427 (Fed. Cl. Spec. Mstr. Nov. 9, 2022). Respondent states that petitioner in *Galante* delayed treatment for his shoulder pain for four months and only attended nine physical therapy sessions after diagnosed with rotator cuff tendinopathy. *Id.* Furthermore, the petitioner in *Galante* also endorsed issues sleeping due to his shoulder pain, felt as if a bee stinger had been stuck in his shoulder, and testified that his pain impacted both his daily and recreational activities. *Id.*; *Galante,* 2022 WL 17852427, at *6. Respondent stated that even though the petitioner in the present case received an intradermal vaccination, and both petitioner's delayed seeking treatment, the *Galante* case "should serve as the outer limit for damages." Resp't Mem. at 9-10. Respondent asserts that the present case should still be valued less than *Galante* because petitioner had no MRI imaging to confirm a shoulder diagnosis, he participated in fewer physical therapy sessions, and he no longer complained of present pain by the time of the entitlement hearing. *Id.* Furthermore, the petitioner in *Galante* had eleven months of active treatment, while the petitioner in the present case only had seven. *Id.* Thus, respondent argues that the appropriate pain and suffering award should be $47,500.00. *Id.*

## IV. Discussion and conclusion

As noted above, factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9. Impairment of function and loss of activities are also considered. It does not appear that the parties dispute petitioner's awareness of his injury. While the record establishes that petitioner delayed seeking treatment, he also testified that he was hoping the pain would subside with self-medication and treatment. Pet'r Supp. Aff. at ¶ 5; Tr. 13. He testified that "it got to a point where…. this ain't working, so I better contact somebody." Tr. 15-16. Additionally, at petitioner's January 5, 2018, medical appointment it was noted that that petitioner has tried "various over-the-counter medications for only transient relief." Pet'r Exhibit ("Ex.") 2 at 16. He used home medication and remedies for his shoulder pain, indicating that he was aware of his injury. It is not uncommon that patients with soft tissue injuries try home remedies for weeks or even months before seeking medial treatment in the hope that the pain will go away without medical treatment. Thus, his delay in seeking treatment does not have any bearing on petitioner's awareness of the injury. Therefore, the focus of the dispute between the parties is the severity of petitioner's injury and the duration of his pain and suffering.

The record demonstrates that petitioner overall had a generally moderate-to-mild course of a left shoulder injury that lasted for less than one year. Initially, when petitioner called the nurse hotline to report his left shoulder pain, it was recorded that his pain was "moderate," and it was "interfering with his normal activities." Pet'r Exhibit ("Ex.") 2 at 15. At his January 5, 2018, appointment, petitioner reported that his pain had been "persistent for several weeks," since the flu vaccination, but described it as a "dull ache." *Id.* at 16. Petitioner also reported that sleeping on the shoulder was painful. *Id.* The exam of petitioner's shoulder showed that he had

6

pain in his shoulder at 160 degrees and beyond, and no problem with internal rotation. *Id.* Petitioner also demonstrated pain with external rotation and resisted external rotation and abduction. *Id.* It appears that his strength was normal. *Id.* His treating physician recommended physical therapy along with continuing to ice the shoulder and using 600 mg of Ibuprofen as necessary. *Id.* at 17.

      At petitioner's initial physical therapy appointment on January 17, 2018, petitioner expressed "concern that part of the needle got stuck in his arm." Pet'r Ex. 2 at 19. Petitioner reported that his pain intensity when sitting was a 3 out of 10 and at the worst, a 10 out of 10. *Id.* He also reported that it was painful to lay on his side while sleeping, he had difficulty reaching out to the side, and when he rests his arm on the window, it is "achy/painful." *Id.* The physical exam revealed he had reduced range of motion upon flexion and abduction, and had mild pain upon external rotation, with reduced range of motion. *Id.* at 21. Petitioner's shoulders strength was only mildly reduced upon abduction and external and internal rotation. *Id.* at 22. He was positive for Kennedy-Hawkin's, Neer's and cross-over tests. *Id.* The impression was that petitioner had "signs and symptoms most consistent with impingement syndrome and [rotator] cuff irritation." *Id.* at 23. Petitioner returned to physical therapy on February 13, 2018. *Id.* at 29. It was recommended that petitioner have physical therapy every other week for 12 weeks. *Id.* At this appointment, petitioner reported that his current pain was a 6 out of 10, and that the shoulder "still bothers him, but not as bad as before." *Id.* at 30. Further, he stated that sleeping was better since he started "more medication" and that while driving his shoulder had a dull ache. *Id.* He did show improvement in his shoulder movements, increasing range of motion on flexion and external rotation. *Id.* Petitioner also still had positive Kennedy-Hawkins, Neer's and cross-over tests. *Id.* at 31.

      On February 20, 2018, petitioner requested that the Flexeril be refilled and reported that he still had pain in his left shoulder which was approximately at an 8 out of 10. *Id.* at 34. During his February 27, 2018, physical therapy appointment, it was recorded that petitioner had continued improvement in range of motion, but that his pain was a 7 out of 10 at rest. *Id.* at 40. He showed improvement on his external rotation from zero degrees abduction and flexion, and he still had positive Kennedy-Hawkins, Neer's and cross-over tests. *Id.* at 41. Petitioner's fourth and final physical therapy appointment was on March 14, 2018, where it was recorded that "patient is not progressing" and he reported a "throbbing deep pain," with his pain level a 6 out of 10 at rest. *Id.* at 45. However, his Kennedy-Hawkins and cross-over tests were negative at this appointment. *Id.* at 46.

      Petitioner had a follow-up with Dr. Scorby on March 15, 2018, where petitioner reported that physical therapy had been helpful, but he still had some residual lateral shoulder pain with certain movements. *Id.* at 49. Dr. Scorby observed that petitioner had "very mild point tenderness over the mid-muscle belly of the deltoid," but that petitioner demonstrated "full active range of motion to flexion, abduction, internal and external rotation." *Id.* Dr. Scorby recorded that petitioner had "some lateral shoulder pain with resisted external rotation and abduction," but that petitioner was "overall improved." *Id.* Additionally, petitioner expressed concern that the needle was still stuck in his arm. *Id.* Dr. Scorby ordered an x-ray of petitioner's left shoulder. *Id.* at 51. The x-ray showed "mild acromioclavicular degenerative change." *Id.* Dr. Scorby

refilled petitioner's Nambumetone and cyclobenzaprine one more time on April 19, 2018. *Id.* at 55. There was no evidence that the needle was stuck in his arm.

From April 2018 until August 2018, petitioner did not seek additional treatment for his left shoulder.  This implies that his shoulder pain had dissipated from the highest pain level of a seven out of 10 at rest to something less.  However, at his August 14, 2018 appointment, petitioner reported a "low-grade ache" in the lateral shoulder and that it was "there most of the time." Pet'r Ex. 2 at 102.  Petitioner also reported taking an anti-inflammatory NASID and occasionally takes Relafen.  *Id.*  Petitioner had no impingement signs and he had active range of motion to flexion, abduction, cross-over abduction, internal and external rotation without pain.  Additionally, his resisted motion was without pain and strength was "grossly normal and symmetric." *Id.*  While this appointment shows that petitioner's pain was significantly reduced and his range of motion was normal, it also demonstrates that his pain never fully resolved.  Thus, these records support a finding that petitioner initially suffered a moderately painful shoulder injury for approximately five months, which became mild in May and continued through petitioner's last appointment in August 2018.

Neither of the parties' proposed awards are persuasive.  Petitioner's position is too high, while respondent's is too low.  Petitioner's comparison of his treatment course and pain and suffering to the petitioner in *Gentile*, is unconvincing.  First, the petitioner in *Gentile* received three steroid injections and participated in nineteen physical therapy sessions.  *Gentile,* at * 2-3.  Additionally, nearly five years after the vaccine, petitioner in *Gentile* continued to demonstrate positive impingement signs.  *Id.*, at *3.  In this matter, the petitioner did not have any steroid injections, participated in three physical therapy sessions, and less than one year after vaccination, demonstrated no positive impingement signs upon examination.  *See* Pet. Ex. 2 at 103.  Finally, in *Gentile*, the petitioner's treating orthopedist opined that petitioner's injury was likely permanent.  *Id.*, at *3.  There is no such letter in this case or any indication in the limited medical records that the petitioner's injury or pain is permanent.

However, respondent's argument that *Galante* is an "outlier," for pain and suffering awards is also unpersuasive.  The facts in the present case and the facts of *Galante* present many similarities.  Like in the present case, the petitioner in *Galante,* also expressed trouble sleeping and using both over-the-counter medication and prescriptions to reduce his pain prior to seeking treatment.  *Galante,* at *5.  Further, the petitioner in *Galante* also had a rather limited treatment course, which included only nine physical therapy appointments and no steroid injections.  *Id.* at *2-3.  However, unlike in *Galante*, the petitioner's injury in this matter was to his dominant arm and his work is physically demanding, justifying a slightly increased amount for petitioner's pain and suffering.  Accordingly, I find that petitioner is entitled to an award of $60,000.00 for pain and suffering.

## V.     Conclusion

Consistent with the above, petitioner is awarded a lump sum payment of $60,000.00, representing pain and suffering.  This amount represents all of the damages that are available to him under 42 U.S.C. § 15(a).  The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>
Thomas L. Gowen
Special Master